UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------

JACOB SCHEINER IRA,

               Plaintiff,

      v.

OTELCO INC., RICHARD A. CLARK,
BARBARA M. DONDIEGO-STEWART,
HOWARD J. HAUG, DAYTON R. JUDD,
STEPHEN P. MCCALL, and BRIAN A.
ROSS,

               Defendants.

------------------------------------------------------

Case No._____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

        Plaintiff Jacob Scheiner IRA ("Plaintiff"), by and through its undersigned counsel, for its complaint against defendants, alleges upon personal knowledge with respect to itself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

        1.      This is an action brought by Plaintiff against Otelco Inc. ("Otelco" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Otelco will be acquired by Oak Hill Capital Partners V (Onshore), L.P. ("Oak Hill Fund V"), a fund managed by Oak Hill Capital Management, LLC ("Oak Hill"), through Oak Hill Fund V's affiliates Future Fiber FinCo, Inc. ("Parent") and Olympus Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On July 27, 2020, Otelco issued a press release announcing that it had entered into an Agreement and Plan of Merger dated July 26, 2020 (the "Merger Agreement") to sell Otelco to Oak Hill.  Under the terms of the Merger Agreement, each Otelco stockholder will receive $11.75 in cash for each share of Otelco common stock they own (the "Merger Consideration"). The Proposed Transaction has an enterprise value of $105.6 million.

3.      On August 9, 2020, Otelco filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Otelco stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Otelco management's financial projections relied upon by Houlihan Lokey Capital, Inc. ("Houlihan") for its financial analyses and the data and inputs underlying the valuation analyses performed by Houlihan; (ii) the background of the Proposed Transaction; and (iii) potential conflicts of interest of the Company's financial advisors, Houlihan and Lazard Middle Market LLC ("Lazard").  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, Otelco's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Otelco's common stock trades on the Nasdaq Capital Market which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Otelco.

9.     Defendant Otelco is a Delaware corporation with its principal executive offices located at 505 Third Avenue East, Oneonta, Alabama 35121.  The Company provides wireline telecommunications services in Alabama, Maine, Massachusetts, Missouri, New Hampshire, Vermont and West Virginia.  Otelco's common stock trades on the Nasdaq Capital Market under the ticker symbol "OTEL."

10.     Defendant Richard A. Clark ("Clark") has served as Chief Executive Officer and a director of the Company since January 2020.  Defendant Clark previously served as the Company's Chief Operating Officer and was appointed President effective May 1, 2019.

11.     Defendant Barbara M. Dondiego-Stewart ("Dondiego-Stewart") has been a director of the Company since 2019.

12.     Defendant Howard J. Haug ("Haug") has been a director of the Company since December 2004.

13.     Defendant Dayton R. Judd ("Judd") has been a director of the Company since 2019.

14.     Defendant Stephen P. McCall ("McCall") has served as Chairman of the Board since June 2013 and as a director of the Company and its predecessor Rural LEC Acquisition LLC since January 1999.

15.     Defendant Brian A. Ross ("Ross") has been a director of the Company since May 2013.

16.     Defendants identified in paragraphs 10-15 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

17.     Oak Hill is a private equity firm managing funds with approximately $15 billion of initial capital commitments and co-investments since inception.  Over the past 34 years, Oak Hill and its predecessors have invested in over 90 private equity transactions across broad segments of the U.S. and global economies.  Oak Hill applies an industry-focused, theme-based approach to investing in the following sectors: Media & Communications; Services; Industrials; and Consumer, Retail & Distribution.

18.     Oak Hill Fund V is a fund managed by Oak Hill.

19.     Parent is a Delaware corporation and an affiliate of Oak Hill Fund V.

20.     Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent.

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

21.     Otelco was founded as a Delaware limited liability company in 1998 for the purpose of operating and acquiring rural local exchange carriers ("RLECs").  Since 1999, the Company

has acquired eleven RLEC businesses, four of which serve contiguous territories in north central

Alabama; three of which serve territories adjacent to either Portland or Bangor, Maine; and one

each serving a portion of western Massachusetts, central Missouri, western Vermont and southern

West Virginia.

22.    In addition to traditional telephone services, Otelco provides a variety of

unregulated telecommunications services in all of its RLEC territories, including internet data lines

and long distance services.

23.    The Company has also acquired three facilities-based competitive local exchange

carriers ("CLECs"), which offer services primarily to business and enterprise customers in Maine,

New Hampshire and Massachusetts.

**The Proposed Transaction**

24.    On July 27, 2020, Otelco issued a press release announcing the Proposed

Transaction.  The press release states, in relevant part:

> ONEONTA, Ala., July 27, 2020 -- Otelco Inc. (Nasdaq: OTEL) ("Otelco" or the
> "Company"), a wireline telecommunication services provider in Alabama, Maine,
> Massachusetts, Missouri, New Hampshire, Vermont and West Virginia, announced
> today that it has entered into a definitive agreement to be acquired by affiliates
> formed by Oak Hill Capital ("Oak Hill"), a private equity firm, for $11.75 per share
> in cash, which represents an equity purchase price of $40.6 million and an
> enterprise value of $105.6 million.  As part of the definitive agreement, Oak Hill
> will assume or refinance Otelco's outstanding debt.  The consideration represents
> a 43.3% premium to the unaffected share price of Otelco as of June 23, 2020, a
> 53.2% premium to the 20-Day Volume Weighted Average Price as of the same
> date, and a 58.1% premium to Otelco's average daily closing stock price during the
> second quarter of 2020.
>
> Otelco's Board of Directors approved and declared advisable the merger
> agreement, and Otelco's Board of Directors recommended the approval and
> adoption of the merger agreement by the holders of shares of Otelco common stock.
> A special meeting of Otelco's shareholders will be held as soon as practicable after
> the filing of a definitive proxy statement with the U.S. Securities and Exchange
> Commission ("SEC") and subsequent mailing to shareholders.  The mailing of the
> proxy statement is expected to take place following the expiration of a 30-day 'go-

shop' period, during which Otelco is permitted to encourage and solicit alternative proposals from third parties.

The transaction is not subject to financing contingencies and is expected to close in the fourth quarter of 2020. The agreement is subject to Otelco shareholder approval, as well as other regulatory and customary closing conditions. Otelco's largest shareholders are a group of related entities, which collectively own 49.6% of the Company's outstanding shares and have agreed to vote in favor of the transaction.

"Like much of the telecommunications industry, Otelco is rapidly deploying technology, including fiber to the premise, to increase internet speeds for our customers," commented Richard Clark, President and CEO of Otelco. "We have invested in fiber network construction over the last several years in response to the demand for higher bandwidth and have demonstrated our ability to deliver the necessary technology. Oak Hill has invested capital in other telecommunications providers to advance the deployment of the technology needed to support up to one gigabit internet speeds. Oak Hill's commitment to facilitate Otelco's growth will allow the Company to accelerate fiber growth plans that would not have been possible within our existing capital structure."

"This transaction is a good outcome for Otelco's shareholders, customers and employees. We believe Oak Hill will provide the resources to speed up our network upgrade plan and wish them and the Company continued success," commented Stephen McCall, Chairman of Otelco's Board of Directors.

"Otelco has assembled a talented leadership team capable of ramping up their deployment of advanced technology solutions," said Jennifer Jun, Principal at Oak Hill. "With our experience and capital, we can support Otelco's mission to serve more customers with increasing broadband speeds. We look forward to working with Richard and the rest of Otelco's senior management team in executing on Otelco's next chapter of growth."

**<u>Insiders' Interests in the Proposed Transaction</u>**

25.     Otelco insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Otelco.

26.     Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Oak Hill. Pursuant to the Merger Agreement, all outstanding stock options and

restricted stock unit awards ("RSU Awards") will vest and convert into the right to receive the Merger Consideration.   The following table summarizes the transaction related compensation Company insiders stand to receive:

| Name | Options (#) | RSUs (#) | Amount ($) |
|---|---|---|---|
| *Named Executive Officers* | | | |
| Richard A. Clark | 100,000 | N/A | 126,500.00 |
| Curtis L. Garner, Jr. | 3,500 | 5,607 | 74,737.25 |

**The Proxy Statement Contains Numerous Material Misstatements or Omissions**

27.   The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Otelco's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

28.   Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Otelco management's financial projections relied upon by Houlihan for its financial analyses and the data and inputs underlying the valuation analyses performed by Houlihan; (ii) the background of the Proposed Transaction; and (iii) potential conflicts of interest of the Company's financial advisors, Houlihan and Lazard.

***Material Omissions Concerning Otelco Management's Financial Projections and Houlihan's Financial Analyses***

29.   The Proxy Statement omits material information regarding Company management's financial projections.

30.   For example, the Proxy Statement fails to disclose the Company's projected unlevered, after-tax free cash flows over the projection period and the line items underlying the Company's unlevered, after-tax free cash flows.

31.     Additionally, the Proxy Statement describes Houlihan's fairness opinion and the various valuation analyses performed in support of its opinion.   However, the description of Houlihan's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.   Without this information, as described below, Otelco's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Houlihan's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

32.     With respect to Houlihan's *Selected Companies Analysis* and *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions analyzed by Houlihan, respectively, and the Company's Adjusted EBITDA for the 12-month period ended March 31, 2020.

33.     With respect to Houlihan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the Company's projected unlevered, after-tax free cash flows; (ii) quantification of the Company's estimated unlevered, after-tax free cash flows for the year 2029; (iii) quantification of the Company's terminal value; and (iv) quantification of the inputs and assumptions underlying the discount rates of 6.0% to 7.0% and 12.5%.

34.     The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" and "Opinion of Houlihan Lokey Capital, Inc." sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

35.     The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

36.     For example, the Proxy Statement sets forth that Otelco entered into confidentiality

agreements with 24 potential buyers during the period from January 2020 to April 2020 and 11 confidentiality agreements with potential buyers during the go-shop period. *Id.* at 25, 28. Yet, the Proxy Statement fails to disclose whether the confidentiality agreements executed by potential buyers include "don't-ask, don't-waive" ("DADW") standstill provisions that are presently precluding any of these potential buyers from submitting a topping bid for the Company.

37. The failure to disclose the existence of DADW provisions, creates the false impression that any of the potential buyers who entered into confidentiality agreements could make a superior proposal for the Company. If those confidentiality agreements contain DADW provisions, then those potential buyers can only make a superior proposal by (i) breaching the confidentiality agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

38. Any reasonable Otelco stockholder would deem the fact that the most likely topping bidders for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

39. Additionally, the Proxy Statement fails to disclose whether the 24 potential buyers who executed confidentiality agreements during the period from January 2020 to April 2020, including parties identified in the Proxy Statement as Party B and Party C, were included and contacted by Lazard during the go-shop period.

40. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Houlihan's and Lazard's Potential Conflicts of Interest***

41.     The Proxy fails to disclose material information concerning the potential conflicts

of interest faced by Houlihan and Lazard.

42.     The Proxy Statement sets forth:

Houlihan Lokey and certain of its affiliates have in the past provided investment
banking, financial advisory and/or other financial or consulting services to Oak Hill
or one or more security holders or affiliates of, and/or portfolio companies of
investment funds affiliated or associated with, Oak Hill (collectively, with Oak Hill,
the "Oak Hill Group"), for which Houlihan Lokey and its affiliates have received
compensation. Houlihan Lokey and certain of its affiliates may provide investment
banking, financial advisory and/or other financial or consulting services to the
Company, Parent, other members of the Oak Hill Group, other participants in the
Merger or certain of their respective affiliates or security holders in the future, for
which Houlihan Lokey and its affiliates may receive compensation. On June 25,
2020, Houlihan Lokey, Inc. publicly announced that it has agreed to acquire MVP
Capital, and, following such announcement, representatives of the Company
advised Houlihan Lokey that MVP Capital has in the past provided investment
banking, financial advisory and/or other financial or consulting services to the
Company, for which MVP Capital has received compensation. In addition,
Houlihan Lokey and certain of its affiliates and certain of Houlihan Lokey and their
respective employees may have committed to invest in private equity or other
investment funds managed or advised by Oak Hill, other participants in the Merger
or certain of their respective affiliates or security holders, and in portfolio
companies of such funds, and may have co-invested with members of the Oak Hill
Group, other participants in the Merger or certain of their respective affiliates or
security holders, and may do so in the future. Furthermore, in connection with
bankruptcies, restructurings, distressed situations and similar matters, Houlihan
Lokey and certain of its affiliates may have in the past acted, may currently be
acting and may in the future act as financial advisor to debtors, creditors, equity
holders, trustees, agents and other interested parties (including, without limitation,
formal and informal committees or groups of creditors) that may have included or
represented and may include or represent, directly or indirectly, or may be or have
been adverse to, the Company, Parent, other members of the Oak Hill Group, other
participants in the Merger or certain of their respective affiliates or security holders,
for which advice and services Houlihan Lokey and its affiliates have received and
may receive compensation.

Proxy Statement at 39-40.  The Proxy Statement fails, however, to disclose the specific services

Houlihan provided to the Company or Oak Hill, affiliates of, and/or portfolio companies of

investment funds affiliated with or associated with Oak Hill ("Oak Hill Group") and quantification

of the fees received for such services.

43.     Additionally, the Proxy Statement fails to disclose (i) the amount of compensation Lazard has received or is expected to receive for its engagement by the Company; (ii) the services Lazard has performed for the Company or the Oak Hill Group; (iii) the timing and specific nature of such services; and (iv) quantification of the amount of fees received by Lazard for such services.

44.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

45.     The omission of this information renders the statements in the "Background of the Merger" and "Opinion of Houlihan Lokey Capital, Inc." sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

46.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Otelco stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

47.     Plaintiff repeats all previous allegations as if set forth in full.

48.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the

statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

49.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about Otelco management's financial projections relied upon by Houlihan for its financial analyses, the data and inputs underlying the valuation analyses performed by Houlihan, the background of the Proposed Transaction and potential conflicts of interest of the Company's financial advisors.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

51.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

52.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

53.     Plaintiff repeats all previous allegations as if set forth in full.

54.     The Individual Defendants acted as controlling persons of Otelco within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

officers and/or directors of Otelco, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

55.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

57.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

58.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-

9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Otelco's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in its favor on behalf of Otelco, and against defendants, as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Otelco stockholders;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  September 21, 2020

WEISSLAW LLP

By

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*